NAMOMI and MAHOE, his wife, *vs.* AH NIU and CAROLINE, his wife.

APPEAL FROM DECISION OF McCULLY, J.

JULY TERM, 1885.

JUDD, C. J.; McCULLY AND PRESTON, JJ.

Plaintiffs, an elderly Hawaiian and his wife, sold to defendants two pieces of land, one belonging to the husband, the other to his wife, and subsequently claimed that they had been fraudulently induced to include both pieces in the deed, whereas they had only intended to sell that belonging to the wife.

Held that there being no conclusive evidence of inadequacy of consideration, or that plaintiff was incompetent to do business, or that any fraudulent representations were made, the deed cannot be set aside.

Equity will not relieve in the case of a bargain simply improvident.

Decree affirmed.

OPINION OF THE COURT, BY JUDD, C. J.

WE have carefully considered the evidence in this case and the

55

arguments of counsel, and see no reason why the decree of the Vice-Chancellor should be reversed.

The plaintiff Namomi sought the purchaser, and the evidence is strong that he sold the land which was already leased. The lease includes the parcel of land which the bill alleges was not intended to be sold.

We think the decree should be affirmed with costs.

*W. R. Castle*, for plaintiffs.

*A. S. Hartwell*, for defendants.

Honolulu, September 19, 1885.

## DECISION OF McCULLY, J., APPEALED FROM.

The plaintiffs, who are elderly Hawaiians living in Koolaupoko, Oahu, complain that they have been fraudulently led to sign a deed which conveyed to the defendants the land comprised in two certain Royal Patents, based on kuleana awards, of which they were the holders, whereas they intended to convey but one of the premises. Royal Patent No. 1362 was the property of Mahoe, the wife, by inheritance; Royal Patent No. 2296 of Namomi. Both parcels of land were in the same ahupuaa of Kaopa, and not far from each other. Both were under an existing lease to one Han Same at $160 per year, and had been further leased to this defendant, the lease to begin January 1, 1888, at $210 per year. There was a mortgage of $250 on the piece owned by Mahoe.

On the day when this deed was made, May 24, 1884, Namomi had been "conducted" by the witness, John Manomano, to Kaneohe, where he had the business of acknowledging a deed of conveyance of a piece of land to Abram Waiwaiole, his grandson. This being done, Namomi expressed a desire to go to the store of Ah Niu, defendant, as he wished to sell another piece of land to Ah Niu. They went there and met Ah Niu. Namomi proposed to sell him land for $700, says this witness; for $600 is the averment of Namomi in the bill; for $800 is the testimony of Caroline, defendant. The price demanded, all the testimony agrees, was said by Ah Niu to be too much, and there was a long conversation. Ah Niu offered $300, and Namomi accepted that with the agreement that Ah Niu should pay the mortgage and interest, also the expenses of the deed, and by the testimony of G. Barenaba

before the execution of the deed Namomi also demanded and Ah Niu consented to allow him $105, which Ah Niu had paid for a half year's rent in advance of the lease, to begin in 1888.

So much is without controversy. The material question remains, what land did Namomi intend to sell, and suppose he was selling. The deed was drawn by John Barenaba, copied from a pencil draft by Pahia. They would appear to have come in during the negotiation. Barenaba testifies that the talk was about the pieces of land in Kailua, already leased to Ah Niu. After the bargain was struck at $300, Ah Nui asked Barenaba to prepare a deed, and as Pahia had been present, gave him also a show in the business. Namomi came and sat at the table. Ah Niu produced a lease which described the land to be sold, and Barenaba copied from that the description which is only the numbers of the awards and the Royal Patents. After it was written it was read to Namomi in a loud voice, he being dull of hearing. Barenaba says he was not acquainted with the land, he wrote merely from the lease before him. There is no testimony that he was instructed to write a deed different from the intention of the grantor, or that he undertook to do so. The money, $300, was counted out to Namomi; $270 having been furnished by Caroline, the deed was in her name. G. Barenaba (the senior) took the acknowledgment of Namomi the same day. He heard the negotiation, and says that Namomi wished to sell the two lands which were under lease for $700, but consented to sell for $300, the payment of the mortgage and the cancelling (holoi) of the $105 he had received on account of rent.

The plaintiff, Namomi, was in Court, but was not put on the stand. He is elderly. The testimony of the witnesses is that he is hard of hearing, and Mr. Castle says that he has failed mentally within the last two years.

As to Namomi, whose case I am considering separately, for all his action was separate from the other plaintiff, I can find no proof that he intended to sell only Mahoe's land, and was deceived into signing a deed for both hers and his own. He is the one who sought his purchaser, going to his store for that purpose. It appears probable that he treated all the land as united. The separate titles had been leased together, first to Han Same and after-

wards to the defendant. The price which he asked, whether $800 or $700 or $600, it seems to me could have been proposed only for the whole property. It would have been an unreasonable price to expect to get for the one piece which was already under mortgage. It seems to me improbable that his anxiety was to merely be relieved of the mortgage on Mahoe's land. It is improbable that in the negotiation, which was long and heard by several witnesses, no one heard anything said implying a separation of the property already consolidated by the lease. It was the lease which was produced as the instruction for the land sold. Namomi sat at the table while the deed was being written from the lease, which he knew embraced two pieces of property.

I have said that I fail to find gross inadequacy of consideration. The evidence does not show that Namomi was incompetent to do business. The testimony of his wife is that "he is all right, except that he cannot hear well, and so blunders." If this is merely the case of an improvident bargain, equity will not relieve.

In regard to Mahoe, there is no averment that any fraudulent representations were made to her. She signed and acknowledged the next day at another place. Her principal anxiety seemed to be that the purchaser should pay the mortgage in addition to the amount paid her husband. She says she signed at the urgency of Barenaba. Any deed might be cancelled if such reasons prevailed.

Under these views the bill must be dismissed.

Honolulu, June 24, 1885.